CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

September 17, 2025
LAURA A. AUSTIN, CLERK
BY:
s/A. Beeson
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| SHAVIS HOLLOMAN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 7:24-cv-00188 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| RICK WHITE, *et al.*, | ) | By:   Hon. Thomas T. Cullen |
| | ) | United States District Judge |
| Defendants. | ) | |

Plaintiff Shavis Holloman, proceeding *pro se*, filed this action under 42 U.S.C. § 1983 against Defendants Warden Rick White, Assistant Warden D. Turner, Former Assistant Warden Fuller, Chief of Security J. Hall, Former Chief of Security C. King, Investigator Lt. B. Bolling, Investigator Bentley, Investigator Mrs. Murphy, Food Director Mr. Almarale, Unit Manager E. Miller, Counselor J. Edwards, Regional Special Investigator R. Townsend, Food Service employee Savannah Gentry, and Officer Willson, all employees of Red Onion State Prison ("ROSP"). (*See* Compl. [ECF No. 1].) Now before the court is a partial motion to dismiss[1] filed by Defendants Turner, Fuller, Hall, King, Bolling, Bentley, Murphy, Almarale, Miller, Edwards, Townsend, and Wilson (collectively, the "Moving Defendants"). (*See* Defs.' Am. Mot. to Dismiss [ECF No. 33.].) For the following reasons, the Moving Defendants' motion will be granted in part.

---

[1] Because the Moving Defendants filed a corrected partial motion to dismiss amending the caption, the court will deny their initial partial motion to dismiss (ECF No. 30) as moot.

# I.

Plaintiff alleges that, while he was incarcerated at ROSP, he was forced to have sexual intercourse with Kitchen Supervisor Savannah Gentry on multiple occasions between July 2021 and October 2021. (*See* Compl. 6.) Plaintiff claims that Gentry compelled him via threats that he would be "locked up for solicitation, put in the hold, starve[d] to death, beaten and sent to Wallens Ridge [State Prison]" if he did not comply. (*Id.*) Plaintiff also alleges that, roughly two years later, Plaintiff was sexually assaulted by Officer Wilson, who coerced him into additional sexual activities by threatening to report that he had made inappropriate advances toward her if he did not comply. (*Id.* at 12–13.) Plaintiff further alleges that the other named Defendants failed to protect him from or failed to investigate the misconduct of Gentry and Wilson and/or that they retaliated against Plaintiff for choosing to report Gentry and Wilson's assaults. (*See id.* at 6–16.) The court summarizes Plaintiff's allegations concerning each of these force encounters below, noting the factual allegations advanced against each individual Defendant.

## A. Plaintiff's Allegations Related to the Sexual Assault by Defendant Gentry

### i.  Defendant Gentry

Plaintiff alleges that his relationship with Gentry began when Gentry approached him and told him about the physical abuse she suffered at the hands of her husband. (*Id.*) She offered Plaintiff a "deal" that, if Plaintiff could have Gentry's husband killed, she would give Plaintiff "whatever [he] wanted." (*Id.*) Apparently, other ROSP officials had told Gentry that Plaintiff was a "big-time gang leader with a lot of power." (*Id.*) Gentry provided Plaintiff with her husband's address, a description of his car, and told him about the layout of her husband's

home. (*Id.*) She also cautioned Plaintiff that her husband's neighbor had a camera facing the driveway and to have whoever he sent be careful not to be seen. (*Id.* at 6–7.)

When Plaintiff told Gentry that he was no longer a gang member and did not have the power to accomplish what she had asked, Gentry tried to bribe Plaintiff with sexual favors. (*Id.* at 7.) When Plaintiff refused her offers, she threatened to have him placed in isolation for soliciting a state employee. (*Id.*) Plaintiff then agreed to have sex with Gentry out of fear of the ROSP administration who he claims "have proven to be racists towards the inmates." (*Id.*)

Plaintiff alleges that he and Gentry had sex at least 20 to 25 times in the baker's area of the kitchen or in the inmate bathroom. (*Id.* at 7–8.) Plaintiff further alleges that, during some of these encounters, Gentry forced him to have unprotected sex with her while she was menstruating. (*Id.* at 7.) Plaintiff also claims they engaged in oral sex or other sexual touching at least five times, most often in the stock-room closet. (*Id.*)

Amid their physical encounters, Gentry sought to have a "real" relationship with Plaintiff and provided Plaintiff with a cellphone number to contact her, one that she believed the Virginia Department of Corrections did not have registered to her. (*Id.*) She also allowed Plaintiff to talk with her three children and accessed Plaintiff's JPay account. (*Id.* at 7–8.)

    ii.   <u>Defendant King</u>

In October 2021, ROSP Chief of Security Christopher King approached Plaintiff in the kitchen and asked Plaintiff to come with him. (*Id.* at 8.) When Plaintiff asked where they were going, King told Plaintiff that he was switching Plaintiff's job from "staff cook" to "pod feeder." (*Id.*) And when Plaintiff asked why his job was being changed, King told him it was because Plaintiff was "fucking the kitchen supervisor." (*Id.*) King also told Plaintiff to keep his

mouth shut and that he would have Plaintiff placed in segregation and "tortured" if he told anyone. (*Id.*) King also threatened to send Plaintiff to Wallens Ridge State Prison, where he could make a phone call so "the punishment can continue." (*Id.*)

Plaintiff alleges that King has been the subject of several investigations and is a member of a local K.K.K. organization. (*Id.*) He further alleges that King has beaten, tortured, and even killed inmates. (*Id.*) He also claims that King pays gangs to hurt other gang members at both ROSP and Wallens Ridge and provides his gangs with weapons. (*Id.*) After Plaintiff filed a grievance related to the coerced sex with Gentry, he was approached by gang members at ROSP who asked him to drop his sexual-assault allegations "on behalf of Major King" and told Plaintiff that King and the administration have "put a hit" on Plaintiff at ROSP and at Wallens Ridge. (*Id.* at 9.) King also told Plaintiff that Unit Manager E. Miller and Counselor J. Edwards were informed of the sexual misconduct and "knew to switch [Plaintiff's] job." (*Id.*)

Plaintiff further alleges that King made Plaintiff call Gentry on the inmate phone and tell her not to come back to work to save herself the embarrassment of "getting walked off." (*Id.* at 10.)

iii.    Defendant White

Plaintiff alleges that Warden R. White has "allowed these acts to occur" by failing to protect Plaintiff from harm and by failing to transfer him to a prison in another region after becoming aware of Plaintiff's concerns. (*Id.* at 9.) He claims White allowed Plaintiff's visitation rights to be revoked and offered to give them back if Plaintiff dropped his sexual-assault allegations. (*Id.*) He also claims that White allowed his Unit Manager, Defendant E. Miller, to move Plaintiff from the "honor pod" after a meritless charge against him was dismissed and

will not allow Plaintiff to reenter the honor pod despite nearly four years of charge-free conduct. (*Id.*) Plaintiff alleges that White's failure to act made it possible for similar misconduct to happen again. (*Id.*)

iv.   Defendant Miller

Plaintiff alleges that, in addition to moving Plaintiff out of the honor pod, Miller shares "close ties" with Defendant King and has made it known that he is "Team King" and that Plaintiff will "find [him]self in a hole so deep that [he is] not going to get out of it." (*Id.*) Plaintiff further alleges that Miller attempted to "cover up" the reason for Plaintiff's job switch by switching his job without a termination form. (*Id.*)

v.   Defendant Edwards

Plaintiff claims that Edwards participated in covering up the reason for Plaintiff's job switch along with Miller by failing to use a termination form. (*Id.*) Plaintiff also vaguely alludes to Edwards being in cahoots with King. (*Id.*)

vi.   Defendant Murphy

Plaintiff alleges that Investigator Murphy was aware of Gentry's sexual misconduct toward him, noting that Murphy used to ask Plaintiff about whether he talked to his "kitchen girlfriend" and referring to Plaintiff as a "lady's man." (*Id.* at 9–10.)

vii.   Defendant Fuller

Plaintiff claims that Assistant Warden Fuller was also aware of Gentry's misconduct and "assisted King by covering [it] up." (*Id.* at 10.) He alleges that Fuller and the intelligence department took the stock-room keys from the kitchen supervisors and made them rearrange

the stock room so that boxes would no longer block the entrance and prevent inmates and supervisors from being seen near the entrance of the room. (*Id.*)

      viii.   <u>Defendant Almarale</u>

Plaintiff claims that Kitchen Director Almarale also knew about Gentry's misconduct and "tried to cover it up as well." (*Id.*) Plaintiff alleges that Almarale told him that King was his boss and "whatever he say[s] goes." (*Id.*)

      ix.   <u>Defendant Townsend</u>

Plaintiff alleges that Special Agent R. Townsend investigated this matter and, after one two-hour interview with Plaintiff, believed Plaintiff's version of events, noting that she had been investigating sex crimes for years and that Plaintiff's account was "too detailed to be made up." (*Id.* at 10–11.) But Plaintiff claims that Townsend nevertheless did a poor job with the investigation "in an attempt to cover this matter up for the Department of Corrections" and the administration at ROSP. (*Id.* at 11.) Plaintiff alleges she failed to administer lie detector tests or to "fully verify the information" and claims her poor investigative work led the institutional investigator to find Plaintiff's claims unsubstantiated. (*Id.*)

      x.   <u>Defendants Bolling and Bentley</u>

Plaintiff alleges that Investigators Bolling and Bentley wanted him to drop his claim "in the name of saving the face of their people." (*Id.*)

### B. **Plaintiff's Allegations Related to the Sexual Assault by Defendant Wilson**

      i.   <u>Defendant Wilson</u>

Plaintiff also alleges that on July 22, 2023, between 7:00 a.m. and 9:30 a.m., he was sexually assaulted by ROSP Officer-in-Training Wilson. (*Id.* at 12.) That day, Wilson was

supervising Plaintiff while he cleaned and transferred cleaning supplies from the B-Building's B-3 supply closet to the B-4 supply closet. (*Id.*) While Plaintiff was moving supplies, Wilson struck up a conversation with Plaintiff. (*Id.*) She told him how excited she was for the arrival of her first grandchild and how an inmate had once asked her if "her bottom lips were as pretty as her top lips." (*Id.*) She also told Plaintiff that she was attracted to black men because they "looked better, treat[ed] you better, and their penis[es] [were] bigger." (*Id.*) She then asked Plaintiff about the size of his penis and asked to see it when they got to the B-3 closet. (*Id.*) She told Plaintiff that if he did not oblige her then she would report that Plaintiff approached her in an inappropriate manner. (*Id.*)

When Plaintiff and Wilson reached the B-3 closet, Wilson told Plaintiff to stand under the camera and show her his penis while she stood by the door and watched. (*Id.* at 12–13.) Fearing that she would follow through on her threat to report him if he did not do as she said, Plaintiff complied. (*Id.* at 13.) Plaintiff and Wilson then exited the B-3 supply closet and headed toward the B-4 supply closet, where there was no camera inside the closet. (*Id.*)

Once they arrived at the B-4 closet, Wilson followed Plaintiff inside, unbuttoned her pants, and directed Plaintiff to insert a finger in her vagina. (*Id.*) Plaintiff complied and, while Plaintiff was touching her, Wilson kissed him on his mouth and moaned. (*Id.*) They then left the B-4 closet to get more supplies. (*Id.*) When they returned to the B-4 closet, Wilson told Plaintiff to do the same thing, and Plaintiff again complied. (*Id.*) The next time they left the closet to get more supplies, Wilson told Plaintiff that she wanted to perform oral sex on him. (*Id.*) The next time they returned to the closet, Wilson got on her knees and performed oral

sex on Plaintiff. (*Id.*) After, Wilson told Plaintiff to masturbate in front of her, and Plaintiff again did as he was told, believing he had no choice to do otherwise. (*Id.*)

Wilson remains a correctional officer at ROSP despite Plaintiff's reports of her alleged misconduct. (*Id.* at 16.) Wilson told Plaintiff not to mention what occurred to anyone because she needed her job at ROSP. (*Id.*) She also threatened that, if Plaintiff told anyone, she had family and friends working at ROSP and Wallens Ridge State Prison who would "make [Plaintiff's] life a living hell." (*Id.*)

ii.    Defendant Hall

Plaintiff alleges that Hall, the B-Building sergeant, was the one who instructed Wilson to supervise Plaintiff the morning of the assault. (*Id.* at 12.)

iii.    Defendant Bentley

On November 18, 2023, Plaintiff made a PREA call using the inmate sexual-abuse hotline and asked to speak directly to a representative. (*Id.* at 14.) On November 20, 2023, Plaintiff was interviewed by ROSP Investigator Bentley and by non-party Investigator Stanley. (*Id.*) Plaintiff told them ROSP officers had asked him about the misconduct and that he was being retaliated against. (*Id.*)

iv.    Defendant Townsend

Plaintiff alleges that he was interviewed by Townsend on November 30, 2023, and that he shared detailed accounts of both Gentry's and Wilson's misconduct with her during the interview. (*Id.*) He alleges that Townsend told him that she believed his accounts. (*Id.*) However, Plaintiff claims Townsend dragged out the investigation process, prompting Plaintiff to file an informal complaint about the abuse on December 8, 2023. (*Id.*)

Plaintiff again alleges that Townsend failed to properly investigate his claims "in an attempt to protect her friends in [the] region" despite her initial agreement with Plaintiff's version of events. (*Id.* at 15.) Plaintiff offered to take a lie-detector test, but Townsend told him there was no need. (*Id.*) And although Townsend told Plaintiff she would administer lie-detector tests to Gentry and Wilson, she never did so. (*Id.*)

v.    <u>Defendant White</u>

Plaintiff spoke with White on December 13, 2023, about his sexual-abuse claims. (*Id.* at 14.) White told Plaintiff that "some people" believed the sex was consensual but conceded that, as an inmate and ward of the state, Plaintiff could not consent to sex with a state officer in authority over him. (*Id.*) Plaintiff told White that he feared for his safety and asked to be transferred out of the region based on the threats and retaliation from other staff and inmates. (*Id.* at 14–15.) White refused to transfer him, but told Plaintiff he could write to him and he would consider restoring Plaintiff's visitation rights. (*Id.* at 15.) But White threatened that if Plaintiff's sexual-assault claims resurfaced, there was nothing he could do to help. (*Id.*)

After receiving a response to his informal complaint, Plaintiff filed a grievance on December 27, 2023. (*Id.* at 14.) White responded to Plaintiff's grievance stating that no further action could be taken. (*Id.*)

vi.    <u>Defendant Miller</u>

Plaintiff alleges, while Plaintiff was still in the honor pod, Miller told him to stop writing complaints or he would be removed from the honor pod or put in segregation. (*Id.* at 15.)

vii.    <u>Defendants Bolling and Bentley</u>

Plaintiff claims that Investigators Bolling and Bentley told him that the investigation

into his claims would likely produce insufficient evidence before the investigation was

complete. (*Id.*) On February 5, 2024, Townsend notified Plaintiff that the investigation was

complete and "appropriate action may be taken if required." (*Id.*) But on February 14, 2024,

Bolling notified Plaintiff that the investigation determined his claims were unsubstantiated. (*Id.*

at 15–16.) When Plaintiff attempted to challenge the investigation, he was told by unnamed

officers and inmates that no documents concerning his claims could be processed and that he

would "eventually get what [he] deserve[d]" after things "cool[ed]-down." (*Id.* at 16.)

Plaintiff filed this action on March 12, 2024, claiming violations of his Eighth

Amendment right to be free from cruel and unusual punishment and his First Amendment

right to be free from retaliation for filing a complaint about the sexual assault. (*See id.* at 6, 12.)

In his complaint, he alleges that all Defendant who were not directly involved in the sexual

assaults held positions of power and "should have known" that the assaults were occurring.

(*Id.* at 18.) Plaintiff alleges that he lives in fear of abuse and retaliation based on the actions of

Defendants, particularly of Defendant King's threats to send him to Wallens Ridge State

Prison. (*Id.* at 10.) He also claims he suffers from PTSD, difficulty sleeping, depression,

paranoia, and a mild social disorder because of Defendants' conduct. (*Id.* at 10, 18.)

## II.

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint. *Occupy

Columbia v. Haley*, 738 F.3d 107, 116 To survive such a motion, "a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To be "plausible," a plaintiff's claim must be supported by factual allegations sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although this "plausibility" standard is not akin to "probability," it does require "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Instead, the complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557).

"In deciding whether a complaint will survive a motion to dismiss, a court evaluates the complaint in its entirety, as well as documents attached or incorporated into the complaint." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011) (citations omitted). Additionally, the court "must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *Hall v. DIRECTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017) (citations omitted). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief" as required by Rule 8." *Iqbal*, 556 U.S. at 679 (cleaned up).

## III.

Plaintiff's claims arise under 42 U.S.C. § 1983, which authorizes a civil action by a citizen who is deprived of "any rights, privileges, or immunities secured by the Constitution

and laws" of the United States by a person acting under color of state law. To state a claim under § 1983, a plaintiff must allege both (1) "the violation of a right secured by the Constitution and laws of the United States" and (2) "that the alleged deprivation was committed by a person acting under color of state law." *Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011) (quoting *West v. Atkins,* 487 U.S. 42, 48 (1988)). Plaintiff claims that Defendants violated his rights under the Eighth Amendment and First Amendment. (*See* Compl. 6, 12.) However, the court liberally construes Plaintiff's complaint as raising all the following claims against the Moving Defendants in both their individual and official capacities:

(1) Claims for violating the Eighth Amendment by failing to protect Plaintiff and/or failing to supervise Gentry and Wilson against Defendants Fuller, Almarale, Hall, and Murphy;

(2) Claims for violating the First Amendment by retaliating against Plaintiff for complaining about the sexual misconduct of Gentry and Wilson against Defendants Miller, Edwards, Bolling, Bentley, King, White, and Wilson;

(3) Claims for failing to adequately investigate his claims of sexual assault against Defendants Townsend, Bolling, and Bentley;

(4) State-law civil-conspiracy claims against Defendants King, Miller, Fuller, Almarale, Townsend, Bolling, and Bentley;

(5) Unidentified claims against Defendant Turner; and

(6) Claims for violating PREA against unspecified Defendants.

(*See id.* at 2, 6–17.)

The Moving Defendants seek the dismissal of all claims against Defendants Turner, Fuller, Hall, King, Bolling, Bentley, Murphy, Almarale, Miller, Edwards, and Townsend and of Plaintiff's retaliation claim against Defendant Wilson. (*See* Defs.' Am. Mot. to Dismiss 1–2.) The court addresses the plausibility of each of these claims in turn.

## A. Official-Capacity Claims

Plaintiff's complaint indicates that he is suing all Defendants in both their individual and official capacities. (*See* Compl. 18.) These claims amount to claims against the Commonwealth of Virginia. *See Fauconier v. Clarke*, 966 F.3d 265, 279 (4th Cir. 2020) ("[B]ecause 'a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office,' it is 'no different from a suit against the State itself.'") (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)). But states who have not consented to suits for damages are immune from such actions under the Eleventh Amendment. *See id.* Moreover, § 1983 only permits suit against a "person" who deprives an individual of his or her rights under color of state law, and "neither States nor state officials acting in their official capacities constitute 'persons' within the meaning of the statute when sued for monetary relief." *Id.* at 279–80. For these reasons, all claims against the Moving Defendants for damages in their official capacities will be dismissed.

## B. Claims Against Defendant Turner

Although Plaintiff names Assistant Warden D. Turner as a Defendant in this action, Plaintiff makes no allegations concerning any conduct by Turner that contributed to the violation of his constitutional rights. Liability under § 1983 is "personal, based upon each defendant's own constitutional violations." *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001)

(internal citation omitted). Thus, a § 1983 claim requires concise factual detail about each defendant's personal involvement. *See Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017) (explaining that liability will lie under § 1983 only "where it is affirmatively shown that the official charged acted personally" in the violation of plaintiff's rights and affirming dismissal of claim where plaintiff did not allege personal involvement by the defendant). Although Plaintiff names Turner as a Defendant, he has not identified what Turner did to specifically violate his constitutional rights. Thus, even construing the allegations in the complaint in Plaintiff's favor, the court cannot hold that any of Turner's individual actions were unconstitutional. The court will therefore dismiss all claims against Defendant Turner.

### C.  Eighth Amendment Failure-to-Protect Claims

"The Eighth Amendment guarantees inmates the right to be free from 'cruel and unusual punishments'" and "protects inmates from inhumane treatment and conditions." *Johnson v. Robinette*, 105 F.4th 99, 122 (4th Cir. 2024) (quoting U.S. Const. amend. VIII; *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008)). Although "not every malevolent touch by a prison guard gives rise to a federal cause of action," "[s]exual abuse has no legitimate penological purpose, and is simply not part of the penalty that criminal offenders pay for their offences against society." *Id.* (citations omitted). "A corrections officer's intentional contact with an inmates genitalia or other intimate area, which serves no penological purpose and is undertaken with the intent to gratify the officer's sexual desire or to humiliate the inmate, violates the Eighth Amendment." *Id.* (citations omitted).

Prison officials can be responsible for failing to intervene to protect the constitutional rights of inmates under a theory of bystander liability. *See id.* at 123–24 (citing *Randall v. Prince*

*George's Cnty.*, 302 F.3d 188, 203 (4th Cir. 2002)). To establish bystander liability, the plaintiff

must show that the officer: "(1) kn[ew] that a fellow officer [wa]s violating an individual's

constitutional rights; (2) ha[d] a reasonable opportunity to prevent the harm; and (3) cho[se]

not to act." *Id.* (quoting *Randall*, 302 F.3d at 204).

Alternatively, "[s]upervisory officials may be held liable in certain circumstances for the

constitutional injuries inflicted by their subordinates." *Johnson*, 105 F.4th at 123 (quoting *Shaw

v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994)). To state a claim based on supervisory liability, the

plaintiff must allege:

> (1) that the supervisor had actual or constructive knowledge that
> his subordinate was engaged in conduct that posed a pervasive
> and unreasonable risk of constitutional injury to citizens like the
> plaintiff; (2) that the supervisor's response to that knowledge was
> so inadequate as to show deliberate indifference to or tacit
> authorization of the alleged offensive practices; and (3) that there
> was an affirmative causal link between the supervisor's inaction
> and the particular constitutional injury suffered by the plaintiff.

*Id.* (quoting *Shaw*, 12 F.3d at 799).

The Moving Defendants seek dismissal of Plaintiff's Eighth Amendment failure-to-

protect and/or failure-to-supervise claims against Defendants Fuller and Almarale. (*See* Memo.

in Supp. of Defs.' Mot. to Dismiss 10–11.) The court construes Plaintiff's complaint as also

asserting failure-to-protect claims against Defendants Hall and Murphy and evaluates these

claims for dismissal under Rule 12(b)(6) as well. (*See id.* at 12 (Moving Defendants seeking

dismissal of all claims against Hall and Murphy).) As stated below, Plaintiff has failed to state

an Eighth Amendment claim against any of these Defendants.

i.   <u>Defendants Almarale and Fuller</u>

Plaintiff alleges that both Almarale and Fuller were aware of Gentry's sexual misconduct toward Plaintiff and tried to "cover it up." (Compl. 10.) Plaintiff's allegations concern after-the-fact behavior and the enforcement of King's directives *after* Plaintiff was removed from his position in the kitchen and Gentry was asked not to return to work. (*See id.*)

This is insufficient to state a claim against either of them based on bystander liability. Plaintiff does not allege that either Fuller or Almarale had a reasonable opportunity to prevent the abuse by Gentry, and Plaintiff's allegations also fail to establish that either Fuller or Almarale knew that Gentry was coercing Plaintiff to engage in sexual activities at the time of the coercion. (*See id.*) Similarly, Plaintiff has not stated a claim against Fuller or Almarale based on supervisory liability because he has not alleged that either Fuller or Almarale was Gentry's supervisor or shown any causal link between their inaction and Gentry's misconduct. *See Johnson*, 105 F.4th at 123. The court will therefore dismiss Plaintiff's Eighth Amendment claims against Fuller and Almarale.

ii.   <u>Defendant Murphy</u>

In his complaint, Plaintiff simply alleges that Murphy was aware of Gentry's sexual misconduct toward him based on her comments to Plaintiff about his "kitchen girlfriend" and his status as a "lady's man." (Compl. 9–10.) Like his claims against Fuller and Almarale, Plaintiff's Eighth Amendment claims against Murphy fail because Plaintiff has not sufficiently alleged that Almarale knew that Gentry was violating Plaintiff's constitutional rights, could reasonably have prevented the violation, or that Murphy held any supervisory authority over Gentry. *See Johnson*, 105 F.4th at 123–24. At most, the allegations show that Murphy perceived

some romantic connection between Plaintiff and Gentry, not knowledge of a constitutional violation. (*See* Compl. 10.) This is not enough to support a failure-to-protect claim. Accordingly, the court will dismiss the Eighth Amendment claim against Murphy.

      iii.   <u>Defendant Hall</u>

Plaintiff's only allegation concerning Defendant Hall is that Hall instructed Wilson to supervise Plaintiff the morning Wilson assaulted him. (*Id.* at 12.) Plaintiff does not allege that Hall knew that Wilson planned to or did coerce him into sexual activity, that Hall had a reasonable opportunity to prevent the violation, or that there was any affirmative causal link between Hall's inaction and the sexual assault by Wilson. Plaintiff has therefore failed to state an Eighth Amendment claim against Hall, and the court will dismiss this claim as well.

### D. First Amendment Retaliation Claims

"[T]he First Amendment prohibits public officials from retaliating against individuals for having engaged in protected speech." *Gowen v. Winfield*, 130 F.4th 162, 173 (4th Cir. 2025) (citing *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 545 (4th Cir. 2017)). "To state a colorable First Amendment retaliation claim, a plaintiff must allege that (1) he engaged in protected First Amendment activity, (2) the defendant took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendant's conduct." *Jones v. Solomon*, 90 F.4th 198, 213 (4th Cir. 2024) (quoting *Martin v. Duffy*, 977 F.3d 294, 299 (4th Cir. 2020)). To prove a causal connection, the plaintiff must show that "the defendants were aware of the plaintiff's engaging in a protected activity and show some degree of temporal proximity to suggest a causal connection." *Gowen*, 130 F.4th at 173 (citations and internal quotation marks omitted).

The Moving Defendants seek dismissal of Plaintiff's First Amendment retaliation claims against King, Wilson, Bentley, Bolling, Miller, and Edwards. (*See* Memo. in Supp. of Defs.' Mot. to Dismiss 10–11.)

i.  Defendant King

Plaintiff's specific allegations against King—other than his general assertions that other Defendants acted as members of "Team King"—concern threats made to Plaintiff during their conversation in October 2021 on the day King removed Plaintiff from his staff cook job. (*See* Compl. 8–9.) Plaintiff alleges that during that conversation, King threatened to place Plaintiff in segregation, "tortured," or transferred to Wallens Ridge if Plaintiff told anyone about Gentry's sexual misconduct. (*See id.*)

The court agrees with the Moving Defendants that these allegations cannot support a First Amendment retaliation claim against King because Plaintiff cannot show that he had engaged in a protected First Amendment activity at that time or that King's alleged threats were prompted by Plaintiff's engagement in any protected activity.[2] Nor does Plaintiff allege that King actually acted on any of his threats to have Plaintiff placed in segregation, tortured, or transferred after Plaintiff filed his informal complaint more than two years after the October 2021 interaction. *Cf. Wilson v. Clark*, No. CV 9:18-3184-RMG-BM, 2020 WL 3847510, at *7 (D.S.C. Mar. 27, 2020), *report and recommendation adopted*, No. CV 9:18-3184-RMG, 2020 WL 1910099 (D.S.C. Apr. 20, 2020) (recommending judgment for the defendant on retaliation claim where the plaintiff failed to show that the defendant ever actually took action against

---

[2] The Moving Defendants also argue that any retaliation claim based on the conversations between Plaintiff and King in October 2021 is time-barred. (*See* Memo. in Supp. of Defs.' Mot. to Dismiss 20–21.) However, because the court finds that Plaintiff's retaliation claim against King fails on the merits, it does not address Defendants' statute-of-limitations argument.

him for filing a grievance). Plaintiff's allegations that King "put a hit" on Plaintiff and had other inmates pressure Plaintiff to drop his sexual-assault allegations also fail to state a plausible retaliation claim due to Plaintiff's failure to allege that King or any of the other inmates acted against him after he filed his complaint and grievance.

Finally, to the extent Plaintiff seeks to bring a retaliation claim based on the switching of his job from cook to pod feeder, any such claim fails because Plaintiff has not alleged that that decision was causally linked to any protected activity by Plaintiff. To the contrary, Plaintiff's allegations suggest that the decision was wholly motivated by the sexual relationship between Plaintiff and Gentry. (*See* Compl. 8.) Thus, Plaintiff has not stated any First Amendment retaliation claim against King, and the court will dismiss this claim.

     ii.   <u>Defendant Wilson</u>

As with Plaintiff's claim against King, Plaintiff's retaliation claim against Defendant Wilson fails because he has not alleged that he engaged in any protected activity to prompt Wilson's threats or that Wilson ever acted on her threats to have friends and family at ROSP or Wallens Ridge harm him. Accordingly, the court will grant the Moving Defendants' motion to the extent it seeks dismissal of Plaintiff's First Amendment retaliation claim against Wilson.

     iii.   <u>Defendants Edwards and Miller</u>

Plaintiff alleges that Miller and Edwards attempted to "cover up" the real reason for his removal from his staff cook job by switching his job without using a termination form. (*See* Compl. 9.) Again, Plaintiff cannot state any retaliation claim based on his job switch because he has not alleged that the switch was causally linked to his protected activity.

However, Plaintiff also alleges, though admittedly with very little detail concerning the timeline, that Miller told him to "fall back" from writing complaints while he was in the honor pod and threatened that Plaintiff would be removed from the honor pod if he did not stop. (*Id.* at 15.) He further alleges that Miller did remove him from the honor pod "after a bogus charge" and would not allow Plaintiff reentry into that pod. (*Id.* at 9.) Construing the allegations in the light most favorable to Plaintiff, he has satisfied the minimum standards for pleading a retaliation claim against Miller based on his removal from the honor pod. Plaintiff alleges that Miller was aware that he was filing complaints, threatened to remove him from the honor pod, and ultimately did remove him from the honor pod. (*See id.*) Miller's own statements, as alleged by Plaintiff, create a causal link between Plaintiff's written complaints and his removal from the pod. At this stage in the proceedings, that is enough. The court will therefore deny the Moving Defendants' motion to dismiss the First Amendment retaliation claim against Miller but will grant the motion to the extent it seeks dismissal of the retaliation claim against Edwards.

    iv.   <u>Defendants Bolling and Bentley</u>

In support of his retaliation claim against Defendants Bolling and Bently, Plaintiff alleges only that Bolling and Bentley wanted him to drop his sexual-assault claims to protect their fellow prison officials. (*See* Compl. 11.) Plaintiff does not allege that they took any action that adversely affected his First Amendment rights. Therefore, Plaintiff has not stated a plausible retaliation claim against either Bolling or Bentley, and the court will dismiss Plaintiff's First Amendment claims against them.

### E. Failure-to-Investigate Claims

Plaintiff alleges that Defendants Townsend, Bolling, and Bentley failed to adequately investigate his sexual-assault allegations. But, as this court and others have noted, "failure to investigate is not independently cognizable as a standalone claim under Section 1983." *Anderson v. Clarke*, No. 7:23-CV-00618, 2024 WL 4173807, at *10 (W.D. Va. Sept. 12, 2024) (collecting cases); *see also Williams v. Berger*, No. 3:22CV433, 2022 WL 2718554, at *1–2 (E.D. Va. June 14, 2022), *aff'd*, No. 22-1739, 2022 WL 17103785 (4th Cir. Nov. 22, 2022) (dismissing plaintiff's claims that defendants improperly investigated accident that injured her "[b]ecause the defendants' failure to investigate the facts of the plaintiff's accident do[es] not implicate a constitutional right" (citing *Lopez v. Robinson*, 914 F.2d 486, 494 (4th Cir. 1990); *Smith v. McCarthy*, 349 F. App'x 851, 859 (4th Cir. 2009))); *Williams v. Commonwealth's Att'y Off.*, No. 7:19-CV-00312, 2020 WL 411699, at *2 (W.D. Va. Jan. 24, 2020) ("[Plaintiff] has no legally significant interest in the criminal investigation or prosecution of the individuals who he claims committed crimes against him. Consequently, his claims based on the defendants' failure to investigate or prosecute those individuals do not give rise to any cognizable claim under § 1983."). Because a "plaintiff has no claim based on the quality of the PREA investigation" and "there is no freestanding due process or constitutional right to such an investigation under § 1983," *Truman v. Shrader*, No. 7:22-CV-00570, 2023 WL 6304688, at *2 (W.D. Va. Sept. 27, 2023), the court will grant the Moving Defendants' motion to dismiss Plaintiff's failure-to-investigate claims against Townsend, Bolling, and Bentley.

### F. Civil-Conspiracy Claims

Plaintiff's complaint can also be construed as asserting claims for civil conspiracy under Virginia law against Defendants King, Miller, Fuller, Almarale, and Townsend, Bolling, and Bentley. To state such a claim, the plaintiff must allege "(i) an agreement between two or more persons (ii) to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means, which (iii) results in damage to plaintiff." *Kissinger-Stankevitz v. Town of Tappahannock*, 750 F. Supp. 3d 590, 624 (E.D. Va. 2024) (quoting *William v. AES Corp.*, 28 F. Supp. 3d 553, 574–75 (E.D. Va. 2014)). "Additionally, at least one member of the conspiracy must commit an 'underlying tort' to satisfy the 'unlawful' element." *Id.* (citing *Firestone v. Wiley*, 485 F. Supp. 2d 694, 703 (E.D. Va. 2007)); *see also Lokhova v. Halper*, 995 F.3d 134, 147 (4th Cir. 2021) ("A civil conspiracy claim generally requires proof that the underlying tort was committed.").

In support of any civil-conspiracy claim, Plaintiff generally alleges that several of the Defendants were acting at King's behest to "cover up" the misconduct of Gentry and Wilson. (*See, e.g.*, Compl. 9 (alleging Miller had "close ties" to King and made it known that he is "Team King"); *id.* (alleging Edwards "made an attempt to cover [Gentry's misconduct] up for Major King"); *id.* at 10 (alleging Fuller "assisted King by covering up" Gentry's misconduct); *id.* (alleging Almarale "tried to cover [Gentry's misconduct] up as well" and told Plaintiff that whatever King says goes); *id.* at 11 (alleging Townsend failed to adequately investigate his claims of assault "in an attempt to cover this matter up for the Department of Corrections" and the ROSP administration); *id.* (alleging the institution investigators are in cahoots with King).) But "[t]o withstand a motion to dismiss, a plaintiff must plead the requisite concert of action and unity of purpose in more than mere conclusory language." *Kissinger-Stankevitz*, 750

F. Supp. 3d at 624 (quoting *William*, 28 F. Supp. 3d at 574–75). Here, because Plaintiff offers only vague and conclusory allegations of a conspiracy between any of the Moving Defendants and does not concretely allege any concerted action taken on behalf of the conspiracy or any underlying wrong that was accomplished pursuant to it, his civil-conspiracy claims fail.

### G. PREA Claims

Finally, the court will grant the Moving Defendants' motion to the extent it seeks dismissal of any claims against them under the Prison Rape Elimination Act ("PREA"). "PREA was enacted to address the problem of rape in prison by creating a commission to study the issue and to develop national standards for the detection, prevention, reduction, and punishment of prison rape." *Bracy v. Tully*, No. 1:22CV827 (RDA/WEF), 2022 WL 3229325, at *2 (E.D. Va. Aug. 10, 2022) (citing 34 U.S.C. §§ 30301 *et seq.*). But "[n]othing in the statute suggests that PREA was intended to provide a private cause of action for rape, sexual assault, or sexual abuse." *Id.* For this reason, "this court and others have found no basis in law for a private cause of action under § 1983 by which an inmate may sue for noncompliance with any PREA provision." *Bishop v. Lambert*, No. 7:22CV00614, 2023 WL 1466621, at *2 (W.D. Va. Feb. 2, 2023) (citing *Chapman v. Willis*, No. 7:12-CV-00389, 2013 WL 2322947, at *4 (W.D. Va. May 28, 2013)). While conduct amounting to a PREA violation can also constitute an Eighth Amendment violation, an inmate seeking redress for sexual assault by an officer must file a § 1983 complaint and allege sufficient facts to state a claim for an Eighth Amendment violation. *See Bracy*, 2022 3229325, at *3. Accordingly, the court will dismiss any claim based on the Moving Defendants' alleged violation of PREA.

## IV.

For the reasons set forth above, the court will deny the Moving Defendants' corrected motion to dismiss (ECF No. 33) to the extent it seeks dismissal of the First Amendment retaliation claim against Defendant Miller. However, the court will grant the motion to the extent it seeks the dismissal of all other claims against Defendant Miller, all claims against Defendants Turner, Fuller, Hall, King, Bolling, Bentley, Murphy, Almarale, Edwards, and Townsend, Plaintiff's retaliation claim against Defendant Wilson, any claim under PREA, and all claims against the Moving Defendants in their official capacities.

The clerk is directed to send copies of this Memorandum Opinion and the accompanying Order to Plaintiff.

**ENTERED** this 17th day of September, 2025.

/s/ Thomas T. Cullen
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE